## Matthew Poreba, Appellee, v. Illinois Midland Coal Company, Appellant.

1. EVIDENCE—*when statements made by witness in writing in-
competent as exhibit.* If a witness by reason of his unfamiliarity
with the English language is unable to express clearly a fact or con-
dition with respect to which he is testifying and he does so in
writing, such writing is not a competent exhibit, but *held* in this case,
that its admission was not prejudicial error.

2. MINES AND MINERS—*when instruction as to demand for props
appropriate.* *Held,* that an instruction was good which told the jury
that if under the custom established by the defendant in its mine the
manner in which miners made demands for props was by writing or

causing to be written by chalk on a blackboard placed near the mouth of the shaft for that purpose the props and caps he wanted and the length of the props, and if they further believed from the evidence that the plaintiff, or his brother, caused to be written on such blackboard a demand for props 7–½ feet long for a certain room, then it became and it was the duty of the defendant to furnish the same for said room.

3. VERDICTS—*when excessive.* *Held,* that a verdict was excessive which apparently contained an allowance of at least $2,000 for pain and suffering.

Action in case for personal injuries. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding, Heard in this court at the November term, 1909. Affirmed upon remittitur. Opinion filed May 28, 1910. *Certiorari* denied by Supreme Court (making opinion final).

BROWN, WHEELER, BROWN & HAY, for appellant; MASTIN & SHERLOCK, of counsel.

T. J. CONDON, and A. SALZENSTEIN, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case to recover damages for injuries alleged to have been received by the plaintiff in the coal mine of the defendant. A trial by jury resulted in a judgment for $2,500 in favor of the plaintiff, to reverse which the defendant appeals. The declaration charges a wilful failure by the defendant to furnish props of the size and character demanded by the plaintiff for use in propping the roof of the mine, as provided by section 16a of the Mines and Miners Act, and that in consequence thereof slats or dirt fell from the roof of the room where the plaintiff was working as a miner, and injured him.

There is evidence tending to show the following facts: On January 21, 1908, the plaintiff and his brother, Frank Poreba, were working together in what was designated as room 28 of stub entry 8. The customary way of ordering props in the mine in question was for the miner to write or cause to be written with chalk, on a black-board placed on the

wall at the bottom of the shaft, an order for the same, giving the length and number of timbers and the place where the same were desired. This was usually done at night, as the miners were leaving the mine, and the timbers so demanded were delivered that same night by the timber men, so as to be on hand for use the next morning.

The chief witnesses in behalf of the plaintiff were his brother, one Creaser, a fellow miner, and himself. Neither could speak, read or write the English language, and testified through an interpreter. Their testimony as it appears in the record is incoherent and indefinite, and its purport difficult to determine. We are able nevertheless to glean from it that on the evening the plaintiff was injured, he and his brother wanted props, and, being unable to write, they requested Creaser to order $7\frac{1}{2}$ foot props for the room in which they were working, and that Creaser on the same evening, pursuant to such request, wrote on the blackboard an order for the props. Creaser testified that he had forgotten the number of the room for which he ordered them, but that it was the one in which the plaintiff and his brother were working; that he did not remember how many props he asked for, and thought that he ordered $7\frac{1}{2}$ foot props. The plaintiff and his brother testified that they sounded the roof of the room with their picks before going to work, and found the same to be apparently solid.

About three o'clock that afternoon, while the plaintiff was loading coal into a car, a large clod or lump of solid dirt fell from the roof, striking him upon his back and injuring him. The evidence adduced by the plaintiff tended to show further that all the props then in the room were in use and that others were necessary in order to guard against what are termed "clods," which overlaid the coal or strata, and were liable to fall at any time after they had been exposed to the air for several days. The evidence introduced by the defendant tended to show not only that no demand was made for props but that immediately prior to and after the accident, there were sufficient props of proper size in the room for use if needed, and further that there were apparently no

dangerous conditions in the room prior to the fall, and consequently no necessity for additional props. It is urged that it was not shown that the props were in fact necessary or that the failure to furnish them was the proximate cause of the fall. While the evidence shows that at the time the plaintiff claims he demanded the props, the roof was apparently safe, it further appears from the evidence that when "clods" were present in the roof, they were liable to fall at any time unless properly propped. A dangerous place or condition in a mine need not be present or immediately impending. Safe and proper mining demands that probable as well as present conditions be guarded against. There was sufficient evidence to warrant the court in submitting these questions to the jury, and we cannot say that the findings thereupon were clearly against the evidence.

The court admitted in evidence over the objection of the defendant, the following writing, marked "Exhibit E," which Creaser had prepared during the trial and which he testified was like what he had written upon the black-board:

"4 Est 8 Stab"

"Room 28"

"7 fit ½ pragg"

The exhibit was clearly incompetent as evidence, but its admission under the circumstances was not prejudicial as to warrant a reversal of the judgment. It was in effect a statement by the witness in writing, of what he was unable to clearly express orally, by reason of his unfamiliarity with the English language. The jury with their superior advantages, doubtless drew the same conclusions from his testimony as we have, and treated the writing as but a repetition of his testimony.

It is contended that the court erred in instructing the jury at the request of the plaintiff, that if under the custom established by the defendant in its mine, the manner in which miners made demands for props was by writing or causing to be written with chalk on a black-board placed near the mouth of the shaft for that purpose, the props and caps he wanted, and the length of the props, and if they further be-

lieved that the plaintiff or his brother caused to be written on said black-board, a demand for props 7½ feet long, for said room, then it became and was the duty of the defendant to furnish the same for said room; and further, by another instruction, that if the established custom was that when a miner required or desired to have props, to write or cause to be written upon the said black-board what he desired in that respect, then this would be a sufficient demand for such props under the law.

Counsel argue that inasmuch as neither of the requests assumed specifies when, where or in what number, nor the latter instruction what length of props were desired, the rule announced would leave the demand controlled solely by the fancy of the miner. The custom referred to was doubtless established by the defendant for its own advantage and convenience in the operation of the mine, as well as that of the miners. The evidence shows that the greater number of miners employed by it were of foreign birth and unfamiliar with the English language—many of them unable to read or speak the same. It would be manifestly unreasonable to require that orders so given by them for props should orthographically correct or contain full and precise details. We think that when the operator of a mine is advised that props are desired in a particular place it is the duty of such operator, through the proper servants, to ascertain, by further inquiry, the number and sizes of the props desired, and whether the same are in fact necessary. The assumption that in this view the operator would frequently be subjected to whimsical or capricious demands by the miners, is unwarranted and unreasonable. The court therefore did not err in giving the instruction in question.

The evidence shows that by reason of his injury the plaintiff lost $480, the amount of wages he probably would have earned had he not been injured. There is no proof that he became liable for the expenses incurred by reason of his injuries. On the contrary it appears that the labor union of which he was a member paid the same. His physician testified that at the time of the trial he "seemed to have gotten

well." It is evident that the jury allowed at least $2,000 as damages for the pain and suffering undergone by him. We are of opinion that the damages are therefore clearly excessive. If the plaintiff shall, within ten days from the date of filing of this opinion, remit the sum of one thousand dollars, the judgment will be affirmed; otherwise reversed and the cause remanded.

*Affirmed upon remittitur.*